IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS JOSEPH EPPELSHEIMER (TDCJ No. 1832429), | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:16-cv1901-N-BN |
| LORIE DAVIS, Director Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner Thomas Joseph Eppelsheimer, a Texas inmate, has filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No 3. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. For the reasons explained below, the Court should deny Eppelsheimer's habeas petition.

**Applicable Background**

"Eppelsheimer entered an open plea of guilty to the offense of sexual assault of a child in three cases and indecency with a child in a fourth case and executed judicial confessions admitting to the offenses." *Eppelsheimer v. State*, Nos. 05-13-00182-CR, 05-13-00183-CR, 05-13-00184-CR, & 05-13-00185-CR, 2014 WL 3587374, at *1 (Tex. App.–Dallas July 21, 2014, pet ref'd) (citations omitted); *see State v. Eppelsheimer*, Nos. F11-

71319-X, F11-71623-X, F11-71624-X, & F11-71625-X (Crim. Dist. Ct. No. 6, Dallas Cty., Tex.). "After a bench trial on punishment, the trial court found appellant guilty in all four cases and sentenced him to four consecutive terms of twenty years in prison." *Eppelsheimer*, 2014 WL 3587374, at *1. The Dallas Court of Appeals affirmed the criminal judgments (some as modified) on appeal. *See id*. And the Texas Court of Criminal Appeals (the "CCA") refused discretionary review. *See Eppelsheimer v. State*, PD-1010-14, PD-1011-14, PD-1012-14, PD 1013-14 (Tex. Crim. App. Sept. 24, 2014).

The CCA also denied Eppelsheimer's state applications for writ of habeas corpus without written order on the findings of the trial court without a hearing. *See Ex parte Eppelsheimer*, WR-83,743-02, -03, -04, -05 (Tex. Crim. App. June 1, 2016); *see also Ex parte Eppelsheimer*, Nos. W11-71319-X(A), W11-71623-X(A), W11-71624-X(A), & W11-71625-X(A) (Crim. Dist. Ct. No. 6, Dallas Cty., Tex. Feb. 18, 2016) (trial court's findings of fact and conclusions of law).

Eppelsheimer's timely-filed Section 2254 petition raises claims that both his trial counsel and counsel on direct appeal were constitutionally ineffective, in violation of the Sixth Amendment. *See* Dkt. Nos. 3 & 4. The State filed a response opposing relief. *See* Dkt. No. 16. And Eppelsheimer filed a reply. *See* Dkt. No. 17.

The Dallas Court of Appeals's decision extensively sets out the facts underlying the criminal judgments. *See Eppelsheimer*, 2014 WL 3587374, at *1-*4. The undersigned will incorporate those facts as necessary to address Eppelsheimer's claims.

**Legal Standards**

I.   <u>Review of State Court Adjudications Generally</u>

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly

established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong

-4-

case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where

-5-

the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a

federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

II.   Review of State Court Determinations as to IAC Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

-7-

Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland*

and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit

of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

## Analysis

I. <u>Trial Counsel</u>

Eppelsheimer asserts that his trial counsel violated "[t]he Sixth Amendment right to ... 'effective assistance of counsel,'" *Buck v. Davis*, 580 U.S. \_\_\_\_, 137 S. Ct. 759, 775 (2017) (citations omitted), (1) by misadvising him as to his guilty pleas – specifically, advising Eppelsheimer to plead guilty even though Eppelsheimer believed the victims not to be minors and advising Eppelsheimer to plead guilty to touching a victim's breast even though the victim did not so testify; (2) by failing to advise him as to the possibility that his sentences would be served consecutively; and (3) by not moving to quash the indictments on the basis that one had a different signature than the other three.

The state trial court, in recommending that these claims be denied, relied primarily on the sworn testimony of Eppelsheimer's trial counsel, David Sloane, who was found to be "a trustworthy individual" whose "statements made in his affidavit are worthy of belief." *E.g.*, Dkt. No. 16-1 at 14; *cf. Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually

unreviewable' by the federal courts." (quoting *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999))). That testimony, which the state trial court found to be "dispositive of the allegations made by [Eppelsheimer]," Dkt. No. 16-1 at 14, as summarized by that court in one of its findings and conclusions, is set out below:

> Sloane did not tell Applicant to "just plead guilty" and that "it doesn't matter" whether Applicant was guilty. Sloane does not recall discussing with Applicant whether he touched one of the complainant"s breasts while she danced in a cage. Applicant admitted having intercourse with this complainant. Applicant decided to plead guilty.
> Sloane did not advise Applicant that he would receive probation.
> Sloane did not advise Applicant that, if he did not receive probation, he would receive, at most, a sentence of 10 years.
> Sloane categorizes the "facts of this case were horrific."
> Sloane met with Applicant on a Saturday morning at his office when Applicant had only been charged with two offenses. At that time, Sloane discussed consecutive versus concurrent sentences. Sloane advised that the decision on concurrent vs. consecutive sentences was at the Judge's discretion. Sloane advised Applicant of the punishment range for the offenses (2-20 years confinement). Sloane advised Applicant that he faced a maximum sentence of 40 years (2 cases – the only ones with which Applicant was charged at the time – with 20 year maximum sentences that were ordered to be served consecutively).
> Subsequently, Applicant was charged with three counts of sexual assault of a child, four counts of possession of child pornography, and one count of sexual performance by a child. Applicant was in jail and unhappy with his court-appointed counsel. Sloane was told by Applicant's friend that Applicant was unhappy with appointed counsel so Sloane visited Applicant in the jail. Counsel advised Applicant of the punishment range for the new charged offenses. Again, Sloane advised Applicant that the sentences could be stacked.
> Over the ensuing months, Sloane negotiated with the prosecutor and visited Applicant in jail many times. Applicant was never offered a "10-year concurrent prison sentence." The best offer made by the prosecutor was 15-years confinement for the sexual assault and performance cases. Applicant rejected those pleas despite counsel's request that Applicant provide him with a 10-year counter-offer. Sloane advised Applicant that he believed the Judge would sentence him to at least 10-years confinement and that was the reason he sought a counter-offer from Applicant. Applicant insisted that he wanted

-12-

> probation. Sloane advised Applicant not to seek punishment from a jury because Sloane believed a jury would give him the maximum sentence.
> Sloane was able to agree with the prosecutor that Applicant would plead guilty to the three sexual assault and one indecency case if the State would dismiss the remaining charges. The prosecutor agreed not to request that any sentence be stacked. Sloane conveyed this to Applicant and carefully advised him that the Judge could still stack the sentences. The State did not file a Notice of Intent to Cumulate Sentences and never asked for such during the plea/sentencing hearing.
> Sloane was surprised when the Judge stacked the sentences and he believed the sentence was too harsh. Sloane spoke with Applicant in the jail after the sentence was rendered and Applicant did not express surprise "at anything other than the harshness of the Judge's ruling." Sloane states, "Everything was positive. I do not believe that would have been the case if he had been unaware of cumulative sentencing or that he had any hope of proving his innocence in any of the charges at trial." Sloane continues, "If he had no earthly idea the judge could stack the sentences and just received an 80-year stacked-sentence this surprise would have been the first thing out of his mouth. It would have been the first thing he told appellate counsel."

*Id.* at 14-16.

Considering the state court's reliance on this testimony, which it found to be both credible and dispositive, the undersigned cannot find that the state court's determination that the IAC claims based on trial counsel's advice should be denied amounts "to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

As a consequence, the state court necessarily determined that Eppelsheimer's guilty pleas were voluntary. And Eppelsheimer has not shown that this determination is unreasonable by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *cf. Bass v. Morgan*, 653 F. App'x 299, 302 (5th Cir. 2016) (per curiam) ("Bass has not shown prejudice because he has not shown 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' Thus, Bass has not shown that the state court's decision was contrary to or an unreasonable application of *Strickland* or an unreasonable determination of facts in light of the evidence presented in the state court proceeding." (citations omitted).

The validity of the guilty pleas also cuts off Eppelsheimer's final claim that his trial counsel was unconstitutionally ineffective – for not moving to quash one indictment, which is a "nonjurisdictional challenge[] to the conviction[s'] constitutionality." *Norris v. McDonough*, No. 8:06-CV-0036-T-30TBM, 2007 WL 1655617, at *6 (M.D. Fla. June 6, 2007) (citing *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983) ("Once a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." (citing, in turn, *McMann v. Richardson*, 397 U.S. 759 (1970); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Oct. 1981))); citations omitted); *see Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (claims of ineffective assistance of counsel are waived by a voluntary and intelligent guilty plea "except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea").

The Court should therefore deny all IAC claims made against Eppelsheimer's trial counsel.

II.    <u>Appellate Counsel</u>

Eppelsheimer raises two grounds for why his appellate counsel deprived him of constitutionally-effective assistance: (1) counsel failed to raise whether Eppelsheimer was provided sufficient notice of the concurrent-sentences possibility; and (2) counsel failed to raise whether the Double Jeopardy Clause prohibits Eppelsheimer from being sentenced twice for a single incident of female-organ penetration.

These error were both raised in two of Eppelsheimer's four state habeas petitions. See *Ex parte Eppelsheimer*, Nos. W11-71624-X(A) & W11-71625-X(A). In its findings and conclusions as to these issues, the state court observed that the trial court

> properly stacked the sentences pursuant to Section 3.03 of the Code of Criminal Procedure. Counsel had advised Applicant that his sentences could be stacked. Section 3.03 does not require that there be a written notice or admonition to a defendant regarding possible stacking of sentences. Thus, there was no issue for appellate counsel to raise on appeal with regard to the trial court's decision to stack Applicant's sentences.
>     The complainant in Cause Nos. F11-71624-X and F11-71625-X testified that she went to Applicant's home on Friday evening and had sex with Applicant. They went to the club where Applicant gave her water that "wasn't water" which made her sick. She awakened to Applicant on top of her and pressure on her vagina. She woke up the next morning (Saturday) in Applicant's bed with sperm in her underwear and blood. She had sex again with him on Saturday. Thus, there were two separate instances of sexual assault on the same day (Friday) or on Friday night and Saturday. Therefore, appellate counsel did not err in failing to raise a double jeopardy claim.

Dkt. No. 15-19 at 123-24.

To show *Stickland* prejudice for failing to raise these claims, Eppelsheimer must do more than "show a reasonable probability that ... he would have prevailed on his appeal" if these claims had been raised," *Smith*, 528 U.S. at 285-86 (citing *Strickland*,

-15-

466 U.S. at 694) – he must show that the CCA "unreasonably concluded that there was not 'a reasonable probability that, but for his counsel's unreasonable failure [to raise these claims], he would have prevailed on his appeal,'" *Smith v. Thaler*, 526 F. App'x 395, 409 (5th Cir. 2013) (per curiam) (citations omitted).

After reviewing the trial court's findings and conclusions against Eppelsheimer's arguments, the undersigned cannot find that the CCA's denial of the appellate-counsel IAC claims is unreasonable. The Court should therefore deny all IAC claims made against Eppelsheimer's counsel on direct appeal.

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 23, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE